UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD MICHAEL GOTTARDI and JENNIFER LYN GOTTARDI, | § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. _____ |
| VS. | § § | |
| JP MORGAN CHASE BANK, NA, D/B/A CHASE, | § § § | COMPLAINT |
| | § | With Jury Demand Endorsed |
| Defendant. | § § | |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs, Richard Michael Gottardi and Jennifer Lyn Gottardi (collectively "Plaintiffs"), by counsel, and for their Complaint against the defendant, JP Morgan Chase Bank, NA, d/b/a Chase ("Defendant" or "Chase") and state as follows:

### I. INTRODUCTION

1.  Plaintiffs assert claims against Defendant for the willful, knowing, and/or negligent violation of: 1) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq*., known as the Fair Credit Reporting Act ("FCRA"); 2) the Texas Debt Collection Act ("TDCA"); 3) the common law tort of invasion of privacy; and 4) the chapter 7 discharge injunction of the United States Bankruptcy Court of the Northern District of Texas, Dallas Division, and seek to recover actual, statutory, and punitive damages, legal fees and expenses against Defendant.

1

## II. PARTIES

2.      Plaintiffs are natural persons residing in Rockwall County, Texas and they are "consumers" as defined by the FCRA.

3.      Defendant is a national bank which may be served by delivering citation to its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX75201.

4.      Defendant is a "person" and a "user" of consumer credit and other financial information, as said terms are defined and contemplated under the FCRA.

5.      Defendant is a "debt collector" as defined by the TDCA and 15 U.S.C. § 1692a.

6.      The debt that Defendant was attempting to collect at issue was a "consumer debt" as defined in in the TDCA and 15 U.S.C. § 1692a.

7.      Defendant is a furnisher of consumer credit information to TransUnion, LLC ("TransUnion"), Equifax, and Experian Information Solutions, LLC ("Experian"), the three (3) national consumer reporting agencies.

## III. JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1337(a) and 15 U.S.C. § 1681p and 28 U.S.C. §§2201-2202. .

9.      Venue in this District is proper because Defendant transacts business in this District, Plaintiffs filed their bankruptcy in this district and the conduct complained of occurred in this District.

2

### IV. FACTUAL ALLEGATIONS

10.   On April 30, 2012, Plaintiffs filed a chapter 7 bankruptcy in case number 12-32758-sgj7 ("Bankruptcy Case") in the Dallas Division of the Bankruptcy Court for the Northern District of Texas ("Bankruptcy Court").   On August 1, 2012, the Bankruptcy Court granted Plaintiffs a discharge in their Bankruptcy Case, and Defendant was sent a copy of the Discharge Order.

11.   Prior to Plaintiffs filing their Bankruptcy Case, Defendant asserted pre-petition claims against Plaintiffs in an attempt to collect a consumer debt allegedly owed by Plaintiffs. The debts required Plaintiffs to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.   In Plaintiffs' bankruptcy petition, the subject claims were listed in Schedule "D" as secured claims which were secured by liens on Plaintiffs' previous home located at 812 Kim Lane, Royce City, Texas 75189 (the "Property") and identified as Account Nos. 4650023664717 ("First Lien Account") and 4650023664725 ("Second Lien Account") (collectively the "Loans" or "Accounts").   In their bankruptcy schedules, Plaintiffs listed the Property as surrendered in Schedule "D" and in their Statement of Intentions and moved out of the Property.

12.   On April 30, 2012, Plaintiffs filed a mailing matrix with the Bankruptcy Court that provided Defendant's correct address.

13.   On May 3, 2012, the Bankruptcy Noticing Center for the Bankruptcy Court mailed out the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" to all creditors, including Defendant and other parties based on the mailing matrix previously

3

filed with the Bankruptcy Court.   This mailing constituted formal notice to the Defendant of the above Chapter 7 Bankruptcy.   This notice warned all creditors, including Defendant, in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362.   The United States Postal Service did not return the notice sent to Defendant.   If the United States Postal Service did not return the notice, there is a presumption that Defendant received the notice mailed to it by the Clerk of the Bankruptcy Court.

14.   On August 1, 2012, the Bankruptcy Court issued an order granting Plaintiffs a discharge ("Discharge Order") (the said order followed Official Form B18, including the explanatory language contained therein).   The order discharged Plaintiffs from any liability for Defendant's pre-petition claim.   Included with the Discharge Order was an explanation of the general injunction prohibiting Defendant and others holding pre-petition claims from attempting to collect the claims against Plaintiffs.

15.   The Discharge Order was mailed out to all creditors and other parties listed on the mailing matrix previously filed the Bankruptcy Court.   On August 4, 2012, the Bankruptcy Noticing Center mailed a copy of the Discharge Order to Defendant.   This mailing constituted formal notice of Plaintiffs' discharge and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a).   The Discharge Order and its notice warned all creditors, including Defendant, in conspicuous language that collection of discharged debts was prohibited.   The Discharge Order and notice mailed to Defendant was not returned.   If the United States Postal Service has not returned the mailing of the Discharge Order and notice, there is a presumption that Defendant

4

received the Discharge Order and notice mailed to it by the Clerk of the Bankruptcy Court.  A copy of the Discharge Order is attached herein as "Exhibit A" and is incorporated herein by reference.

16.     At no time has Defendant objected to or disputed the details of the claim in the April 30, 2012 schedules filed in Plaintiffs' Bankruptcy Case.

17.     At no time during the Chapter 7 case did Plaintiffs reaffirm Defendant's debts.

18.     At no time during the Chapter 7 case were Defendant's pre-petition claims declared to be non-dischargeable.

19.     On at least one occasion, Plaintiffs contacted Defendant by telephone and reminded its representatives or agents that they had filed for bankruptcy and received a discharge on the debts at issue and told them not to send them any correspondence in the future.

20.     Despite these communications from the Court and Plaintiffs, Defendant, following the August 1, 2012 discharge, engaged in debt collection activity against Plaintiffs by: (1) sending Plaintiffs statements and letters regarding the Account(s), and (2) impermissibly accessing and reviewing Plaintiffs' credit reports maintained by Experian and TransUnion, stating that their credit reports were being pulled for "collection" or "account review" purposes.

### Statements and Correspondence

21.     On or about October 1, 2012, Defendant sent Plaintiffs a monthly statement for Second Lien Account, complete with payment coupon and return envelope, representing that there was an "Unpaid Principal Balance" on the account of "$22,688.73" and demanding

a "Monthly Payment" due in the amount of "$219.21" and a "Total Payment" of "$2,904.53," even though the Property had been foreclosed and the debt discharged.

22.    A true and correct copy of this October 1, 2012 statement and payment coupon has been attached hereto as Exhibit "B."

23.    On or about November 1, 2012, Defendant sent Plaintiffs a monthly statement for the Second Lien Account, complete with payment coupon and return envelope, representing that there was an "Unpaid Principal Balance" due on the account in the amount of "$22,688.73" and demanding a "Monthly Payment" of $219.21," even though the Property had been foreclosed and the debt discharged.

24.    A true and correct copy of this November 1, 2012 statement and payment coupon has been attached hereto as Exhibit "C."

25.    On or about December 1, 2012, Defendant sent Plaintiffs a monthly statement for the Second Lien Account, complete with payment coupon and return envelope, representing that there was an "Unpaid Principal Balance" due on the account in the amount of "$22,688.73" and demanding immediate payment of "$219.21," even though the Property had been foreclosed and the debt discharged.

26.    A true and correct copy of this December 1, 2012 statement and payment coupon has been attached hereto as Exhibit "D."

27.    On or about February 1, 2013, Defendant sent Plaintiffs a monthly statement for the Second Lien Account, complete with payment coupon and return envelope, representing that there was an "Unpaid Principal Balance" due on the account in the amount of

"$22,688.73" and demanding immediate payment of "$219.21," even though the Property had been foreclosed and the debt discharged.

28. A true and correct copy of this February 1, 2013 statement has been attached hereto as Exhibit "E."

29. On or about December 30, 2013, Defendant sent Plaintiffs two notices, one for the First Lien Account and one on the Second Lien Account, requesting Plaintiffs contact Defendant regarding the Accounts, even though the debts had been discharged and there was no further need for contact.

30. True and correct copies of these notices are attached hereto as Exhibits "F" and "G."

31. On or about January 30, 2013, Defendant sent each of the Plaintiffs a "Tax Year 2012 Form 1099-A" reporting that Defendant had acquired the Property and that the fair market value of the Property was $73,671.00 and that there had been a balance due on the First Lien Account at such time of $97,696.77.

32. True and correct copies of these 1099-A's are attached hereto as Exhibits "H" and "I."

**Impermissible Credit Pulls**

33. Further, despite the change in the legal status of the Accounts, Defendant illegally accessed and reviewed Plaintiffs' credit reports with Experian after the discharge was granted in their Bankruptcy Case, even though it had no permissible basis to take such action.

**Plaintiff Richard Gottardi's Credit Pulls**

34. On September 10, 2012, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

35.     On October 24, 2012, Defendant conducted a hard pull and impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

36.     On November 9, 2012, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

37.     On January 9, 2013, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

38.     On March 8, 2013, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

39.     On May 10, 2013, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

40.     On July 10, 2013, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

41.     On July 23, 2013, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

42.     On September 9, 2013, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

43.     On September 19, 2013, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with TransUnion.

44.     On October 25, 2013, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

45.     On November 8, 2013, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

46.    On November 15, 2013, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

47.    On January 9, 2014, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

48.    On February 21, 2014, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

49.    On March 7, 2014, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

50.    On March 17, 2014, Defendant impermissibly accessed and reviewed Plaintiff Richard Gottardi's credit report with Experian.

51.    True and correct copies of the relevant portions of Plaintiff Richard Gottardi's Experian credit report showing the impermissible account reviews is attached hereto as Exhibit "J," & "K."

52.    True and correct copies of the relevant portions of Plaintiff Richard Gottardi's TransUnion credit report showing the impermissible account reviews is attached hereto as Exhibit "L."

**Plaintiff Jennifer Gottardi's Credit Pulls**

53.    On September 10, 2012, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

54.    On October 24, 2012, Defendant conducted a hard pull and impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

55.     On November 9, 2012, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

56.     On January 9, 2013, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

57.     On March 8, 2013, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

58.     On May 10, 2013, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

59.     On July 10, 2013, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

60.     On July 23, 2013, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

61.     On September 9, 2013, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

62.     On September 19, 2013, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with TransUnion.

63.     On October 25, 2013, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

64.     On November 8, 2013, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

65.     On November 15, 2013, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

66.    On January 9, 2014, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

67.    On February 21, 2014, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

68.    On March 7, 2014, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

69.    On March 17, 2014, Defendant impermissibly accessed and reviewed Plaintiff Jennifer Gottardi's credit report with Experian.

70.    True and correct copies of the relevant portions of Plaintiff Jennifer Gottardi's Experian credit report showing the impermissible account reviews are attached hereto as Exhibit "M," & "N."

71.    True and correct copies of the relevant portions of Plaintiff Jennifer Gottardi's TransUnion credit report showing the impermissible account reviews are attached hereto as Exhibit "O."

72.    The purpose Defendant gave to Experian for accessing Plaintiffs' credit reports was allegedly for "collection" or "review purposes;" yet, the debts on the Accounts had been discharged and there was no legitimate reason for Defendant to review Plaintiffs' credit reports at the time it made such requests.  If the reports were reviewed for collection purposes, Defendant was trying to collect a debt in violation of the discharge injunction. If it denies that this was the purpose, then Defendant was trying to gain access to Plaintiffs' personal financial information, which is protected by law.

73.     Defendant's illegal access to Plaintiffs' credit reports has occurred as recently as March 17, 2014, long after the discharge of the debts at issue.

74.     The effect of these illegal credit report pulls has been to negatively impact Plaintiffs' credit report, credit worthiness, and credit score.

75.     The conduct of Defendant has proximately caused Plaintiffs past and future monetary loss, past and future damage to their credit and credit worthiness, past and future mental distress and emotional anguish and other damages that will be presented to the jury.

76.     Defendant knew and continues to know that a discharge order means the debt is no longer collectible, but Defendant has made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to violate Plaintiffs' right to privacy by impermissibly accessing Plaintiffs' credit reports after the discharge was granted in their bankruptcy case.

77.     After a reasonable time for discovery, Plaintiffs believe they will be able to show that despite receiving dozens, if not hundreds, of disputes complaining that Defendant was illegally accessing credit reports for account holders whose debts with Defendant had been discharged in bankruptcy, Defendant intentionally and knowingly has not corrected its policy of so doing.

78.     After a reasonable time for discovery, Plaintiffs believe they will be able to show that all actions taken by employees, agents, servants, or representatives of any type for Defendant were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

79.     After a reasonable time for discovery, Plaintiffs believe they will be able to show that all actions taken by Defendant at issue were performed with maliciously, wantonly, recklessly, intentionally or willfully, and with either the desire to harm Plaintiffs and/or with the knowledge that its actions would very likely harm Plaintiffs and/or that its actions were taken in violation of the law.

80.     After a reasonable time for discovery, Plaintiffs believe they will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and consumer reports and Defendant is subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies.

## V. GROUNDS FOR RELIEF - COUNT I

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et. seq*)

81.     Plaintiffs repeat, re-allege, and incorporate by reference all paragraphs above as if fully rewritten here.

82.     The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

(f)   Certain use or obtaining of information prohibited. – A person shall not use or obtain a consumer report for any purpose unless –

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

*See* 15 U.S.C. § 1681b (f).

83. Section 1681b(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

(a) In General. – * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

***

(3) To a person which it has reason to believe –

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

***

(F) otherwise has a legitimate business need for the information * * *

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

See 15 U.S.C. § 1681b (a)(3).

84. On at least thirty-two (32) occasions after the Discharge Order was signed and entered in Plaintiffs' Bankruptcy Case, Defendant requested and obtained Plaintiffs' consumer reports from Experian.

85. On such occasion, Defendant represented to Experian that such requests were made for an "account review" or "collection" purposes.

86. When requesting and obtaining Plaintiffs' credit information from Experian, as described herein, Defendant had actual knowledge that it did not have a permissible purpose to obtain such information.

87. Defendant has actual knowledge that as of Plaintiffs' bankruptcy filing in April 30, 2012 and upon its subsequent discharge on August 1, 2013, the underlying Accounts were closed and Defendant was legally prohibited from pursuing any collection against them or communicating with Plaintiffs about the Accounts and the underlying discharged debts to justify an account review of their credit information.   Accordingly, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiffs' credit reports with the credit bureaus at all times at issue.

88. At the time Defendant impermissibly accessed Plaintiffs' credit reports, Defendant had actual knowledge that Plaintiffs had not requested new credit from it, nor had they initiated a credit transaction with Defendant at any time since their bankruptcy filing or discharge.   As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiffs' credit information as it did.

89. Defendant had actual knowledge that as of August 1, 2012, Plaintiffs did not authorize access and reviews of their consumer report by Defendant subsequent to their bankruptcy

discharge and in fact, Plaintiffs called Defendant and complained to it about its collection efforts.  As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiffs' credit information when it engaged in such action.

90.    For Defendant to repeatedly request and obtain Plaintiffs' private personal and financial information, in the face of actual knowledge that it had no permissible purpose to do so, constitutes its knowing and willful violations of the FCRA.

91.    After a reasonable time to conduct discovery, Plaintiffs believe they can prove that Defendant requested and obtained Plaintiffs' private personal and financial information from the credit bureaus for the illegal purpose of attempting to collect on the underlying discharged debt.

92.    After a reasonable time to conduct discovery, Plaintiffs believe they can prove that Defendant used false pretenses, namely the representation that it intended to use Plaintiffs' consumer reports for account review or collection purposes, to obtain Plaintiffs' private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

93.    After a reasonable time to conduct discovery, Plaintiffs believe they can prove, additionally and/or in the alternative, Defendant is unwilling or unable to prevent its system from requesting and obtaining Plaintiffs' consumer report without a permissible purpose, thereby subjecting Plaintiffs to having their private, personal and financial information disclosed without their consent, authorization or other legal justification.

94.    As a direct and proximate result of Defendant's conduct, as outlined above, Plaintiffs have suffered, and will continue to suffer, substantial injury, including, but not limited to,

mental anguish and emotional distress from the ongoing invasion of their privacy, entitling Plaintiffs to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

95.   Defendant's actions at issue have caused Plaintiffs to suffer embarrassment, mental anguish, inconvenience, and other pecuniary and non-pecuniary damages.

96.   Defendant's conduct reveals a conscious and reckless disregard of Plaintiffs' rights.   The injuries suffered by Plaintiffs were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiffs to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

## VI. GROUNDS FOR RELIEF - COUNT II

## TEXAS FINANCE CODE - UNFAIR DEBT COLLECTION

97.   Plaintiff repeats, re-alleges, and incorporate by reference all paragraph as above as if fully rewritten here.

98.   Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

a)   Tex.  Fin. Code § 392.301(a)(8), which prohibits Defendant from taking an action prohibited by law, since the FCRA prohibits the pulling of a credit report without a valid purpose, Defendant's actions were also a violation of the Texas Finance Code. Also, since Defendant's attempts to collect the discharged debt constituted a violation of the bankruptcy discharge injunction currently in place, such actions also constituted a violation of the Texas Finance Code.

b)   Tex.  Fin.  Code  §  392.304(a)(8),  which  prohibits  Defendant  from

misrepresenting the character, extent, or amount of Plaintiffs' debt, or misrepresenting the status of Plaintiffs' debt in a judicial or governmental proceeding, since Defendant alleged the justification for pulling Plaintiffs' consumer reports from the credit bureaus was an "account review" or "other business transaction," that was a misrepresentation of the status of debt at issue, and by reporting a balance due on the Account(s) to the credit bureaus, concealing the fact that the debt had been discharged, and continuing to send statements to Plaintiff showing a balance due and enclosing a remittance coupon, Defendant was misrepresenting that the debt was collectable when it was not by virtue of the automatic stay or the discharge injunction; and

c) Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, since the debt at issue had been discharged in Plaintiff's Bankruptcy Case and there were no other transactions between the parties after Plaintiffs filed their Bankruptcy Case, the only conclusion that can be drawn is Defendant was trying to gather information for an attempt to collect the debt at issue in violation of the discharge injunction, and the continued sending of statements, demands for payment, and calls from the collection agent hired by Defendant to Plaintiffs were deceptive means to collect a debt, since the automatic stay was in effect or the debt had already been discharged and was uncollectible.

99. Under Tex. Fin. Code Ann. § 392.403, the said violations render Defendant liable to Plaintiffs for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorney's fees. Plaintiffs' injuries resulted from Defendant's gross negligence, malice, and/or actual fraud, which entitle Plaintiffs to punitive damages.

100.   Due to Defendant's conduct, Plaintiffs were forced to hire counsel and their damages include reasonable attorney's fees incurred in prosecuting this claim.

## VII. GROUNDS FOR RELIEF - COUNT III.

## INVASION OF PRIVACY

101.   Plaintiffs restate and reiterate herein all previous paragraphs.

102.   Defendant's conduct, as described herein, when it acquired a copy of Plaintiffs' consumer report constituted an invasion of Plaintiffs' private affairs. The invasion was one that would be highly offensive to a reasonable person because confidential and sensitive personal and financial information is included a consumer report. Such wrongful acts caused injury to Plaintiffs which resulted in extreme emotional anguish, loss of time, and damage to their credit.

103.   Plaintiffs injuries resulted from Defendant's malice which entitles Plaintiffs to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VIII. GROUNDS FOR RELIEF - COUNT IV

## VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

104.   Plaintiffs repeat, re-allege, and incorporate herein all previous paragraphs above as if set forth herein in their entirety.

105.   At all times material to this proceeding, Defendant had actual knowledge of Plaintiffs' Bankruptcy Case and the discharge of the debts at issue in said case.

106.   Defendant failed to cease its debt collection activity on the Accounts and debt at issue when it became aware that Plaintiffs filed for bankruptcy protection and the debts had been discharged in their Bankruptcy Case, as evidenced by Defendant sending Plaintiffs statements and repeatedly accessing their credit reports without a lawful purpose.

107.   Defendant's aforesaid actions were willful acts and constitute efforts to collect discharged debt from Plaintiffs in violation the discharge injunction of 11 U.S.C. §524(a). Defendant's failure to comply with the aforesaid laws, in light of repeated notices from the Bankruptcy Court about Plaintiffs' Bankruptcy Case, and the discharge of Plaintiffs' debt at issue and the legal effect of the discharge, illustrates its contempt for Federal law and the discharge injunction.

108.   The actions of Defendant in repeatedly accessing Plaintiffs' credit reports from the Experian regarding the Accounts at issue, along with sending Plaintiffs statements and letters on the Accounts, constitute a gross violation of the discharge injunction as set forth in 11 U.S.C. § 524(a)(1)-(3).

109.   The facts and background stated above demonstrate that Defendant willfully violated the orders and injunctions of the Bankruptcy Court as they concern the chapter 7 Bankruptcy Case filed by Plaintiffs.  With this prima facie showing, the duty is on Defendant to show, as the only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability.  Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiffs must prevail on their claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to

20

the bankruptcy filed by Plaintiffs.   Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant.   Any allegation of a good faith exception should not be allowed.

110.   Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…'"

111.   No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with regard to the discharge injunction, as stated above.

112.   The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint.   None of the aforementioned has been approved by the Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiffs' Bankruptcy Case as pertaining to the rights and remedies of Defendant.

113.   Also, there is no requirement of mitigation on the part of Plaintiffs that is relevant to violations of the orders and injunctions of the Bankruptcy Court.   Any attempt to burden Plaintiffs with policing the misconduct of Defendant would be a complete derogation of the law.   It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for

shouldering the cost of compliance.  Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited.  Any defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendant.   No allegation of a mitigation as a defense should be allowed.

114.   Plaintiffs have been injured and damaged by Defendant's actions and are entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §524, and pursuant to the Court's powers under 11 U.S.C. § 105.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court will:

A.   Enter judgment in favor of Plaintiffs and against Defendant for statutory damages and actual damages as provided by the FCRA, the TDCA, for invasion of privacy, and for violation of the Bankruptcy Court's discharge injunction.

B.   Find that appropriate circumstances exist for an award of punitive damages to Plaintiffs;

C.   Award Plaintiffs pre-judgment and post-judgment interest as allowed by law; and

D.   Grant such other and further relief, in law or equity, to which Plaintiffs might show themselves justly entitled.

Respectfully submitted,


_____/s/ James J. Manchee_____
James J. Manchee
State Bar Number 00796988
Marilyn S. Altamira
State Bar Number 00796119
Manchee & Manchee, PC
12221 Merit Drive, Suite 950
Dallas, Texas 75251
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

ATTORNEYS FOR PLAINTIFF


## JURY DEMAND

Plaintiff hereby demands a trial to a jury on all issues so triable.

___5-28-14_____                            _____/s/ *James J. Manchee*_____
Date                                       James J. Manchee


23